In re John Allen LAURIN and June Irene Laurin, Debtors.

John Allen LAURIN and June Irene Laurin, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 92–20749.
Adv. No. 92–2053.

United States Bankruptcy Court,
D. Wyoming.

Sept. 1, 1993.

Janet L. Tyler, Laramie, WY, for plaintiffs.

Donald R. Wrobetz, Asst. U.S. Atty., Cheyenne, WY, Karen Lynne Baker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## DECISION GRANTING IRS' MOTION FOR SUMMARY JUDGMENT

HAROLD L. MAI, Chief Judge.

THIS MATTER is before the court on Cross Motions for Summary Judgment.

The court having considered the Debtors' Motion for Summary Judgment, the IRS's Motion for Summary Judgment, the attachments, exhibits, and deposition transcript, having heard argument of counsel, being fully advised, does hereby render its decision as follows.

### FINDINGS OF FACT

1. John Allen Laurin is a retired iron worker. He is married to June Irene Laurin. Mr. Laurin has an eighth grade education.

2. In 1979, Mr. Laurin was working in Denver, Colorado. Some of his co-workers were talking about lectures they had attended about income taxes. One of his co-workers said he had not paid income taxes for 15 years. Mr. Laurin became interested in figuring out how that was done.

3. Mr. Laurin attended a "tax protestor's lecture" put on by one John Grambush. Mr. Grambush told Mr. Laurin he did not have to file an income tax return.

4. Mr. Laurin had previously filed income tax returns. He had previously filed true W–2 forms.

5. Mr. Laurin chose to believe Mr. Grambush's representation that he could claim he was exempt from the requirement to file taxes. Mr. Laurin characterizes Mr. Grambush as a tax protestor and the meetings as "tax protestor lectures."

6. Accordingly, beginning in 1980, Mr. Laurin mailed various statements to the IRS claiming that he was not required to file

income tax returns. These reasons include that there was no jurisdiction over him, that he had no "income" within the meaning of the IRS code, and that federal income taxes were "excise taxes" which the federal government had no authority to levy against him.

7. Mr. Laurin did not file timely tax returns for 1979, 1980, 1981, or 1982. He also signed W-4 for those same years that claimed he was exempt from federal income taxes.

8. In 1983, Mr. Laurin became disabled and retired from his work as an ironworker.

9. On June 30, 1983, the government sent Mr. Laurin a letter notifying him that the IRS had no record of receiving his tax returns for the years 1979 through 1981.

10. Mr. Laurin did not file timely tax returns for the years 1983, 1984, 1985, or 1986.

11. On June 19, 1986, the Internal Revenue Service (IRS) issued a Notice of Deficiency against John A. Laurin. This notice assessed tax in the amount of $3,554 for the 1979 tax year, $5,811 for the 1980 tax year, and $13,542 for the 1981 tax year. In addition, negligence penalties under sections 6651(a), 6654, and 6653(a)(1) of the Internal Revenue Code were assessed.

12. On May 22, 1989, the IRS sent Mr. Laurin a statutory notice of deficiency for the 1982 tax year.

13. In 1989, Mr. and Mrs. Laurin consulted a lawyer. This lawyer advised them to file tax returns.

14. On September 7, 1990, Mr. Laurin filed his individual tax returns for the years 1979 through 1983. On September 7, 1990, the Laurins filed joint tax returns for the years 1984, 1985, and 1986.

15. The Laurins timely filed their joint income tax returns for 1989 and 1991.

16. On October 7, 1991, the Laurins signed a Tax Court Decision regarding the years 1984, 1985, and 1986 in which minimal additional taxes were assessed for each of those years.

17. On October 23, 1991, Mrs. Laurin signed a Form 870 waiver agreeing to the immediate assessment of the deficiencies based upon the previous tax court decision.

18. On February 24, 1992, the IRS assessed John Laurin for the amount of his 1984 income taxes, including interest and penalty.

19. On February 3, 1992, the IRS assessed John Laurin for the amount of his 1985 and 1986 income taxes, including taxes and penalties.

20. On September 18, 1992, the Laurins filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

21. On October 1, 1992, the Laurins filed this adversary proceeding seeking a determination that their debt to the IRS is dischargeable.

22. Mr. Laurin did have an income for the years 1979 through 1985. Mr. Laurin did have a duty to pay federal income tax for those years and to file tax returns for those same years.

23. Mr. Laurin attempted to avoid paying income tax for years, 1979, 1980, 1981, 1982, 1983, 1984, 1985, and 1986.

24. There is no evidence that would support a finding that Mrs. Laurin attempted to avoid federal income tax for the years 1979 through 1986 or that she attempted to avoid payment of taxes for these same years.

## CONCLUSIONS OF LAW

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. A Complaint to Determine the Dischargeability of a Debt is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

Section 523(a)(1) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge a debtor's liability for any debt

(1) for a tax . . .

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

The parties agree that there are no material issues of fact. They disagree, however, on the conclusions that should be drawn from the assembled exhibits, especially Mr. Laurin's deposition testimony.

■ In order to establish "willfulness" of an attempt to avoid taxes, the government must show that the taxpayer had a duty under the law, that he knew he had a duty, and that he voluntarily and intentionally violated that duty. *Cheek v. United States,* 498 U.S. 192, 200, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991).

■ Viewed in the light most favorable to Mr. Laurin, the evidence establishes that he knew he had a duty to pay taxes and file income tax returns prior to 1979. In 1979 he found out that others were not paying taxes. He went to the "tax protestor's lecture" for the purpose of figuring out how he too could stop paying taxes. The tax protestor provided him with forms of documents to file with a laundry list of reasons why he was exempt.

At his deposition, Mr. Laurin could not recount the basis for his claim of exemption. Instead, he simply stated that he claimed he was exempt because he thought he could.

Thereafter, the IRS sent the debtor notification stating his duty to file returns. (Government's ex. 4) ("We have determined you were required to file a federal income tax return for 1979, 1980 and 1981"). In June of 1983, he sent the IRS a letter stating that "I do not have an income and not one required to file." Attached to this letter are various documents setting forth arguments about jurisdiction and the nature of "income." Mr. Laurin testified at his deposition that he merely copied the attachments from documents which had been sent to him by the organization. His deposition testimony states that he can't define exempt, that he doesn't know what was said at the taxpayer lecture that convinced him of the position, in short he can't answer any questions about his purported belief.

The only conclusion to be drawn from this record is that he heard that others were avoiding income tax, he decided to find out how it was done, and found out it was done by claiming he was exempt.

The court cannot find that the taxpayer didn't know he had a duty to file and pay taxes when Mr. Laurin testified he didn't understand the position Grambush espoused. Mr. Laurin testified that his belief he didn't have to file was "because I believed Mr. Grambush was right and I believe he told me, but I don't know why he'd tell me that because I had an income."

Mr. Laurin looked into the tax protestors for the purpose of figuring out how he could evade the taxes. He did stop filing and stop paying, even when faced with regular notification from the IRS that he had a duty to file and that various amounts were due. It simply is not credible or plausible that he would believe that he no longer had a duty to file and pay when he was getting regular notices from the IRS that indicated he did have a duty and various amounts were due. Instead, the clear conclusion from the record is that he thought he could avoid his known duty to file and pay by simply sending in to the IRS various materials prepared by a tax protestor organization.

The court must conclude that Mr. Laurin willfully attempted to avoid payment of his taxes for the years 1979 through 1986, within the meaning of 11 U.S.C. § 523(a)(1)(C).

In addition to being nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C), Mr. Laurin's income tax for the years 1984, 1985, and 1986 was non-dischargeable because it was assessed against him within 240 days of the petition date. 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(A)(ii).

Based upon the foregoing, the court will enter an order granting the defendant IRS's Motion for Summary Judgment and denying the plaintiffs/debtors' Motion for Summary Judgment. The court will also enter a separate judgment declaring Mr. Laurin's tax debt for the years 1989 through 1986 to be non-dischargeable and declaring Mrs. Laurin's tax debt for the years 1979 through

1986, if any, to be dischargeable in bankruptcy.