**In re John A. SEMO, Debtor.**

**John A. SEMO, Plaintiff,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 94–24348–BM.**
**Adv. No. 95–2087–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 2, 1995.

Steven L. Sablowsky, Gefsky & Lehman, P.C., Pittsburgh, PA, for Plaintiff.

Stanley E. Levine, Campbell & Levine, Pittsburgh, PA, for Debtor.

R. Scott Clarke, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, Frederick W. Thieman, United States Attorney, Michelle O. Gutzmer, Assistant U.S. Attorney, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor seeks a determination that a debt he owes to the United States of America Internal Revenue Service (hereinafter "IRS") for unpaid taxes and interest for certain tax years is not subject to the exception to dischargeability set forth at 11 U.S.C. § 523(a)(1)(C). Debtor denies that he was aware at that time of his duty to file income tax returns for the years in question and denies that he willfully attempted to evade or defeat payment of the taxes owed.

IRS responds that debtor realized at all relevant times that he had a duty to file the subject tax returns and asserts that he willfully attempted to evade or defeat payment of the taxes.

Judgment will be entered in favor of IRS and against debtor for reasons set forth below. The debt in question is nondischargeable pursuant to § 523(a)(1)(C) of the Bankruptcy Code.

—I—

### FACTS

After attending college for several years without obtaining a degree, debtor began working in 1964 for Mohawk Airlines, which subsequently merged with the predecessor of USAir, Inc. He presently is employed by USAir as a systems control supervisor, a position requiring considerable responsibility and expertise.

From 1964 until 1981, debtor filed his federal and state income tax returns in a timely manner and paid all taxes owed. Most, if not all, of these returns were prepared by debtor himself.

Debtor's approach to filing his federal tax returns and to paying his federal taxes changed dramatically starting in 1981. Within a period of two years he prepared and submitted to his employer a series of W–4 forms, Employee's Withholding Allowance Certificate, wherein he increased his withholding allowances dramatically.

For instance, in January of 1981 debtor escalated his allowances to twelve (12) and certified that, to the best of his knowledge, the number of allowances claimed did not exceed the number to which he was entitled under the law. The record does not indicate how many allowances debtor had claimed prior to this time. It is known, however, that he had no dependents living with him even though he substantially increased the number in January of 1981.

Debtor submitted another W–4 to his employer in April of 1982 wherein he claimed forty-five (45) allowances. Debtor's intention was to reduce the tax withheld from his pay to zero.

Upon discovering that forty-five allowances were not enough to prevent his employer from withholding at least something from his pay, debtor submitted another W–4 to his employer in August of 1982 wherein he increased the number of allowances to fifty (50). He also claimed exemption from any withholding because he allegedly did not expect to owe any federal income tax for 1983 and because he allegedly expected a full refund of all income tax withheld.

Debtor submitted another W–4 to his employer in February of 1983 wherein he claimed that he owed no income tax for the previous year. He further certified that he did not expect to owe any income tax for 1983 and that he expected a full refund of all income tax withheld.

Debtor's income during tax years 1982 through 1986 ranged between $50,627.00 and $66,851.31. The above W–4s debtor submitted to his employer significantly reduced the amount withheld from his pay during these years. A total of $2,765.53 was withheld in 1982. No withholding at all occurred in 1983, 1985, and 1986. His employer withheld only $25.00 from his pay in 1984.

Debtor filed no federal income tax returns for tax years 1982, 1983, 1984, 1985, and 1986 until October of 1987 and paid no federal income taxes for these years. During the above years debtor's late-filed returns indicated he knew he had a duty to file and pay and in fact did file and pay his state and local taxes.

On April 11, 1983, debtor sent a letter to the Treasury Secretary requesting his 1983 tax assessment. He sent a similar letter on September 20, 1984 requesting his 1984 tax assessment.

During the years for which he did not file tax returns, debtor returned forms sent to him by IRS wherein he stated that he was not required to file tax returns.

IRS notified debtor on July 17, 1987, that it had no record of his tax returns for tax years 1982 through 1985 and requested information about the returns. Debtor's response to this notice was markedly different from his response to previous notices from IRS. After consulting with an attorney, debtor sent a letter to IRS requesting tax return forms for 1982 through 1986. Shortly thereafter, debtor filed his federal income tax returns for 1982 through 1986 without paying the taxes due and owing for these years. Said returns indicate that he claimed only himself as an "allowance" except in 1983, when he averred his son lived with him for six (6) months and he claimed two exemptions. No significant losses or debts are indicated therein.

Debtor filed a voluntary chapter 7 petition on December 29, 1994. His primary (if not exclusive) reason for filing for bankruptcy was to discharge his debt to IRS. The schedules attached to the petition indicated that debtor had only five creditors to whom he owed a total of $210,065.83. Schedule E, Creditors Holding Unsecured Priority Claims, listed IRS as having a fixed and liquidated claim in the amount of $130,000.00 for unpaid income taxes. The vast majority of the balance of his debt relate to real estate which debtor has exempted and/or reaffirmed.

The chapter 7 trustee reported in January of 1995 that no assets of the bankruptcy estate were available for distribution to creditors in light of the exemptions taken by debtor.

On March 8, 1995, debtor commenced the above adversary action seeking a determination that 11 U.S.C. § 523(a)(1)(C) does not apply to the debt owed to IRS for unpaid taxes for tax years 1984, 1985, and 1986 and that the debt therefore is dischargeable.

Trial of the adversary was conducted on October 18, 1995, at which time both sides were given an opportunity to present evidence on the issues in the case.

—II—

## DISCUSSION

■ Debtor and IRS are in agreement that the issue fundamental presented in this case is whether income taxes and interest debtor owes to IRS for tax years 1985 and 1986 are subject to the exception to dischargeability set forth at 11 U.S.C. § 523(a)(1)(C). If they are not, the debt is

dischargeable.[1] The general rule when a chapter 7 debtor obtains relief is that all prepetition debts are discharged. *See* 11 U.S.C. § 727(b). Section 523(a) of the Bankruptcy Code, however, enumerates various exceptions to this general rule. For instance, 11 U.S.C. § 523(a)(1) sets forth several scenarios in which tax liabilities are not dischargeable. It provides in pertinent part that:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax ...—

(C) with respect to which the debtor ... willfully attempted in any manner to evade or defeat such tax....

IRS maintains that debtor willfully attempted to evade or defeat paying his income taxes for tax years 1985 and 1986 and that these debts therefore are excepted from discharge pursuant to the above provision.

■ IRS has the burden of proving by a preponderance of the evidence that debtor's tax liabilities for tax years 1985 and 1986 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). *See Graham v. IRS,* 973 F.2d 1089, 1101 (3d Cir.1992).

■ If it is to prevail on this issue, IRS must establish that:

(1) debtor had a duty to file income tax returns;

(2) debtor knew he had such a duty; and

(3) debtor voluntarily and intentionally violated that duty.

*See Matter of Bruner,* 55 F.3d 195, 197 (5th Cir.1995); *also U.S. v. Toti,* 149 B.R. 829, 831 (E.D.Mich.1993), *aff'd* 24 F.3d 806 (6th Cir), *cert. denied,* —— U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994).

Debtor allows that the first of these requirements is satisfied in this case. He concedes that he had a duty under the law to file federal income tax returns for tax years 1985 and 1986 and to pay any taxes that are owed. He denies, however, that IRS has established the second and third elements. That is to say, debtor denies that he knew in 1985 and 1986 that he had a duty to voluntarily file income tax returns and denies that he voluntarily and intentionally violated that duty.

We shall address these contentions *seriatim.*

### A. Did Debtor Know That He Had A Duty To File Federal Income Tax Returns For Tax Years 1985 And 1986?

■ According to debtor, he did not realize that he had a duty to file federal income tax returns for 1985 and 1986 when these returns were due. He claims that he mistakenly believed at the time that he did not have to file income tax returns on his own after attending seminars conducted by a well-known tax protester and after reading up on the topic. As evidence that he so believed, debtor points to the letters he sent to the Treasury Secretary; to his responses to queries from IRS wherein he stated that he was not required to file; and to the numerous W–4s wherein he increased the number of allowances and declared that he was exempt from withholding.

Debtor's contention is without merit. Mere mortals such as we can never be certain what lies in another's heart and whether they have a good-faith (albeit mistaken) belief concerning something. The circumstances in this case, however, make it clear that debtor knew all along that he had a duty to file his tax returns.

When pressed to state where he attended seminars conducted by the tax protester, or to identify the books or articles that led to believe that he did not have to file federal income tax returns, debtor became aphemic. His silence was deafening.

Were we to believe debtor, we would have to accept the following implausible sequence of events: debtor realized for nearly two decades prior to 1981 or 1982 that he was required to file federal income tax returns; he came to believe in 1981 or 1982 that he was not required to do so; he then came once again in 1987 to realize, as he had

---

1. Debtor and IRS stipulated at trial that debtor paid all tax and interest due for tax year 1984 after filing the complaint in this adversary action and that the penalties for tax years 1984, 1985, and 1986 are dischargeable.

realized prior to 1981 or 1982, that he had such a duty after all.

It defies belief that an individual with a clear understanding for some eighteen years that he had a duty to do something would suddenly believe for the next several years that he had no such duty and then later on would just as suddenly understand once again that he indeed had such a duty. Debtor, who testified at trial, is an intelligent individual with several years of college education who holds a supervisory position with USAir. He did not appear to be gullible, confused, or uninformed about matters. We are convinced that debtor knew all along that he had a duty to file his federal income tax returns.

In our estimation, the letters debtor sent to the Treasury Secretary and his responses to inquiries from IRS prior to 1987 concerning his tax returns were calculated to protect him from possible criminal prosecution for failing to file tax returns. They were not an expression of what debtor sincerely believed.

### B. Did Debtor Voluntarily And Intentionally Violate That Duty?

■ Debtor concedes that he violated his duty to file tax returns for tax years 1985 and 1986 in a timely manner but denies that his failure to do so was "willful" for purposes of § 523(a)(1)(C).

There is a split of opinion among courts as to whether an affirmative act designed to evade or defeat a tax is required for purposes of § 523(a)(1)(C).

Some courts have held that a debtor need not commit an affirmative act of evasion for a debt to be nondischargeable pursuant to § 523(a)(1)(C). An act of omission—e.g., failure to file a tax return—may suffice. *See Matter of Bruner*, 55 F.3d at 200; *also In re Toti*, 24 F.3d 806, 809 (6th Cir.1994). This appears to be the majority view.

A minority of courts have held that a mere act of omission—e.g., failure to pay one's taxes—is not sufficient. Affirmative conduct by a debtor in furtherance of a scheme to evade or defeat a tax is required before a debt is dischargeable pursuant to

§ 523(a)(1)(C). *See In re Haas*, 48 F.3d 1153, 1158 (11th Cir.1995).

As far as we are can determine, the United States Court of Appeals for the Third Circuit to date has not entered the fray and taken a position on this issue.

Without offering much in the way of argument, debtor urges us adopt the holding of *In re Haas* and to conclude on that basis that his debt to IRS for unpaid income taxes for 1985 and 1986 does not fall under the exclusion to dischargeability set forth at § 523(a)(1)(C). We decline to accept debtor's invitation.

We need not decide whether we agree with *Bruner* and *Toti* or with *Haas* to resolve this issue. The outcome is the same under either version. Even if we were to adopt *Haas*, we would have to conclude that debtor willfully attempted to evade or defeat paying his 1985 and 1986 federal income taxes.

Debtor failed to prepare and file his federal income tax returns for tax years 1985 and 1986 when they were due. This "act of omission" amounted to an attempt to evade payment of those taxes. We previously determined that debtor realized when his 1985 and 1986 tax returns were due that he had a duty to file them with IRS in a timely manner. His failure to do so when he knew he had to was "willful".

In addition, debtor did more than merely omit filing his 1985 and 1986 tax returns when they were due. He also took affirmative steps that were calculated to evade or defeat payment of these taxes. Debtor submitted several W–4s to his employer between January of 1981 and February of 1983 wherein he progressively increased the number of claimed allowances from twelve to forty-five to fifty in an attempt to reduce to zero the amount of income tax withheld from his pay. He even went so far as to declare that he was exempt from withholding.

As a result of these submissions, the amount withheld by debtor's employer from his pay was zero in both 1985 and 1986. It is beyond doubt that debtor's intention in knowingly submitting these revised W–4s was to avoid having any amounts withheld from his pay for payment of his federal in-

come tax. These affirmative steps were necessary for debtor to avoid paying any of his federal income taxes for tax years 1985 and 1986. Had he not done so and merely failed to file his tax returns, IRS still would have received the amounts withheld by debtor's employer. We have no doubt that debtor understood the ramifications of his actions.

In short, debtor committed affirmative acts as well as acts of omission in attempting to evade or defeat paying his federal income taxes for tax years 1985 and 1986. We need not choose between *Bruner* and *Toti* or *Haas* to decide this matter. The conclusion that debtor acted willfully follows in either event.

Judgment will be entered in favor of IRS and against debtor declaring that the debt owed to IRS for unpaid income tax and interest for tax years 1985 and 1986 is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C).

An appropriate order shall be issued.