In the Matter of James T. WILBERT, Debtor.

James T. Wilbert, Plaintiff,

v.

Internal Revenue Service, State of California, State of New York, Defendants.

Bankruptcy No. 98–13169–WHD. Adversary No. 00–1010.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

March 20, 2001.

Robert W. Shuman, Sr., Manchester, GA, for Debtor/Plaintiff.

David R. Mackusick, Special Assistant U.S. Attorney, Atlanta, GA, for U.S.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court are cross motions for summary judgment filed by the Debtor James T. Wilbert and the United States of America, on behalf of the Internal Revenue Service. The cross motions arise in an adversary proceeding initiated by the Debtor in accordance with 11 U.S.C. § 523(a)(1). He seeks a declaration that certain tax obligations, both state and federal, are dischargeable under the Bankruptcy Code. This matter constitutes a core proceeding within the Court's subject matter jurisdiction, *see* 28 U.S.C. § 157(b)(2)(I), and it shall be disposed of as follows.

### FINDINGS OF FACT

In their cross motions, the parties stipulated to the following facts, which are recited below verbatim:

1. The debtor in this case, and plaintiff in this adversary proceeding is James T. Wilbert (Mr. Wilbert).

2. Mr. Wilbert filed a petition under Chapter 7 of the Bankruptcy Code in this case on October 6, 1998. He received a discharge on February 4, 1999 and the case was closed. On the debtor's motion, the case was reopened on December 29, 1999. Mr. Wilbert subsequently filed this adversary proceeding seeking a determination that, among other things, his federal income tax liabilities for the years 1980, 1981, 1982, 1985, 1986, 1987, 1988, 1990, 1991, and 1993 were dischargeable.

3. The United States concedes that Mr. Wilbert has no federal income tax liability for the years 1980, 1981, and 1982.

4. The Unites [sic] States concedes that Mr. Wilbert's assessed federal income tax liability for 1993 is not excepted from discharge pursuant to 11 U.S.C. § 507 and § 523, and is, therefore, dischargeable.

5. Prior to 1994, Mr. Wilbert was a tax protester. Mr. Wilbert served his country in Vietnam, and although he was aware of his obligation to file federal income tax returns, pay federal income taxes on his income, and had the ability to do so, he felt that, due to his military service, he should not be required to file income tax returns or to pay taxes on his income. Mr. Wilbert also subscribed to various other tax protester type arguments such as that the imposition and collection of federal income tax was unconstitutional, purely voluntary, or constituted slavery.[1]

6. Mr. Wilbert failed to timely file his federal income tax returns for the years 1985, 1986, 1987, 1988, 1990, 1991 and 1992.

7. For the years 1985, 1986, 1987, 1988, and 1990, the Internal Revenue

---

1. Exhibits 1—4 are attached to the parties' stipulated facts and incorporated therein. Exhibits 1–4 are letters that Mr. Wilbert wrote to the Internal Revenue Service wherein he explained his tax protester views.

Service (IRS) prepared substitute returns based on its determinations of Mr. Wilbert's income and deductions. The IRS then sent Mr. Wilbert a notice of deficiency for each year. Mr. Wilbert did not file a petition with the Tax Court for any of these years, and the IRS assessed Mr. Wilbert's tax liabilities (including taxes and penalties) it determined were owed for these years as follows:

| Year | Assessment | Amount |
| --- | --- | --- |
| 1985 | July 1, 1991 | $2,588.11 |
| 1986 | June 29, 1992 | $1,895.17 |
| 1987 | October 28, 1991 | $4,744.96 |
| 1988 | June 17, 1991 | $1,321.71 |
| 1990 | December 21, 1992 | $3,083.00 |

8. For the year 1991, the IRS prepared a substitute return based on its determinations of Mr. Wilbert's income and deductions and sent Mr. Wilbert a notice of deficiency on May 19, 1993. Mr. Wilbert filed a petition with the Tax Court and on October 4, 1994, filed a 1991 tax return. The Tax Court case was settled by agreement of the parties prior to trial and on November 14, 1994, the IRS assessed Mr. Wilbert's tax liability as agreed by the parties in the amount of $2,772.00.

9. For the year 1992, the IRS prepared a substitute return based on its determinations of Mr. Wilbert's income and deductions and sent Mr. Wilbert a notice of deficiency. Mr. Wilbert filed a petition with the Tax Court and on August 2, 1995, filed a 1992 tax return. The Tax Court case was settled by agreement of the parties prior to trial and on April 29, 1996, the IRS assessed Mr. Wilbert's tax liability as agreed by the parties in the amount of $2,772.00.

10. During 1994, Mr. Wilbert's position regarding federal income tax changed. He met with an accountant who prepared Forms 1040 for 1985, 1986, 1987, 1988, 1990, 1991, and 1992. All of these Forms showed tax due for the year. Mr. Wilbert submitted these Forms to the IRS sometime in late 1994. Mr. Wilbert did not pay any of the taxes due as shown on these Forms.[2]

(Statement of Material Facts ¶¶ 1–10).

Mr. Wilbert contends that his federal tax liabilities for 1985, 1986, 1987, 1988, 1990, 1991, and 1992 do not fall within the exception to discharge set forth in § 523(a)(1)(B) of the Bankruptcy Code.[3] The IRS, in contrast, argues that the tax obligations at issue here are excepted from discharge under § 523(a)(1)(B) and (C). Both parties contend that they are entitled to a judgment as a matter of law.

### CONCLUSIONS OF LAW

#### I. The Summary Judgment Standard

In accordance with Rule 56 of the Federal Rules of Civil Procedure (applicable to bankruptcy pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure), the Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Material facts" are those which might affect the outcome of a

---

**2.** Exhibits 5–11 are likewise attached to the stipulated facts and incorporated therein. Exhibits 5–11 represent the tax returns filed by Mr. Wilbert for the years, 1985, 1986, 1987, 1988, 1990, 1991, and 1992. Also attached to the parties' stipulated facts is Exhibit 12, which are computer generated documents prepared by the IRS entitled

"Certificates of Assessments and Payments" on Mr. Wilbert's accounts for the years 1985, 1986, 1987, 1988, 1990, 1991, 1992, and 1993.

**3.** According to Mr. Wilbert's schedules filed in the main bankruptcy case, he owes the IRS $139,949.63.

proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the movant has made a *prima facie* showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991). In the case sub judice, the Court will examine the record to determine whether the cross motions provide a sufficient legal basis which would entitle either party to a judgment as a matter of law. *Dunlap v. Transamerica Occidental Life Ins. Co.,* 858 F.2d 629, 632 (11th Cir.1988); *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991).

## II.  *11 U.S.C. § 523(a)(1)*

As a general rule, when a debtor seeks Chapter 7 relief, all debts arising prior to the bankruptcy filing will be discharged. *See* 11 U.S.C. § 727(b). The concept of discharging pre-existing debt forms one of the primary tenets of bankruptcy policy. Indeed, "a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citations omitted). At the same time, however, a separate equitable policy mandates that any such mechanism for an unencumbered fresh start should only redound to the benefit of those debtors who are indeed unfortunate, yet honest. *Id.* at 286–87, 111 S.Ct. 654. Through the discharge exceptions set forth in § 523(a), the Bankruptcy Code offers a means of denying those individuals who do not qualify as "honest but unfortunate debtors" the benefits of a fresh start. *Id.* at 287, 111 S.Ct. 654. Thus, as an exception to the general discharge rule, the Bankruptcy Code provides:

(a) A discharge under section 722, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor of any debt—

(1) for a tax or a customs duty—

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully

attempted in any manner to evade or defeat such tax;

\*   \*   \*   \*   \*   \*

11 U.S.C. § 523(a)(1)(B) and (C).

▮ It is a long-standing principle of law that discharge exceptions be narrowly construed against the creditor and in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986). Furthermore, the creditor bears the burden of establishing nondischargeability under § 523(a). FED. R. BANKR. P. 4005; *see also Hunter*, 780 F.2d at 1579; *Goldberg Sec., Inc., v. Scarlata (Matter of Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992). To satisfy that burden, the creditor must prove its case by the preponderance of the evidence. *Grogan*, 498 U.S. at 286–88, 111 S.Ct. 654; *Meyers v. Internal Revenue Serv.*, 196 F.3d 622, 624 (6th Cir.1999).

### III.   Application of § 523(a)(1)(C) to the Instant Case

According to § 523(a)(1)(C), tax debts are nondischargeable if the debtor either filed a fraudulent return or willfully attempted to evade or defeat the payment of taxes. In the case sub judice, the IRS does not contend that Mr. Wilbert submitted a fraudulent return. Thus, the issue is whether the IRS has presented sufficient evidence to prove by a preponderance of the evidence that Mr. Wilbert "willfully attempted in any manner to evade or defeat" his federal income tax liabilities. *See* 11 U.S.C. § 523(a)(1)(C).

▮ Whether a debtor willfully intended to evade or defeat the payment of taxes is a question of fact to be determined from the totality of the evidence. *Teeslink*

*v. United States (In re Teeslink)*, 165 B.R. 708, 716 (Bankr.S.D.Ga.1994) (citation omitted). Through the issuance of two opinions, the Eleventh Circuit has made it clear that a debtor's mere failure to pay taxes will not, in and of itself, satisfy § 523(a)(1)(C). *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1394 (11th Cir.2000) (en banc), *cert. denied*, 531 U.S. 826, 121 S.Ct. 73, 148 L.Ed.2d 37 (2000); *Haas v. Internal Revenue Serv. (In re Haas)*, 48 F.3d 1153, 1157 (11th Cir.1995). "To hold otherwise would be to deny discharge to many honest debtors because mere nonpayment, without more, evidences 'not dishonesty but [ ] the defining characteristic of all debtors-honest and dishonest, alike-insufficient resources to honor all of [one's] obligations." ' *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996) (quoting *Haas*, 48 F.3d at 1156).

▮ Section 523(a)(1)(C) contains a conduct requirement and a mental requirement. *Griffith*, 206 F.3d at 1396; *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir.1997); *Birkenstock*, 87 F.3d at 951. As for the conduct requirement, the IRS must demonstrate that Mr. Wilbert sought to evade or defeat his tax liability "in any manner." *See id.* In *Griffith*, the Eleventh Circuit held that tax debts are nondischargeable if the debtor engages in "affirmative acts" constituting a willful attempt to evade or defeat the payment of taxes.[4] *Griffith*, 206 F.3d at 1395–96. Although the Eleventh Circuit specifically ruled that a debtor's "affirmative acts" can lead to the nondischargeability of tax obligations, this Court does not interpret *Griffith* to mean that a debtor's omissions fail to satisfy the conduct requirement. Other courts have held that

---

**4.** In *Griffith,* the debtor fraudulently transferred property to family members in an effort

to evade taxes. 206 F.3d at 1396–97.

§ 523(a)(1)(C) encompasses both acts of commission and acts of culpable omission. *Fegeley,* 118 F.3d at 983; *Bruner v. United States (In re Bruner),* 55 F.3d 195, 200 (5th Cir.1995); *Toti v. United States (In re Toti),* 24 F.3d 806, 809 (6th Cir.1994), *cert. denied,* 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). The Court observes, as have others, that the statute neither defines nor limits the conduct or methods by which a debtor can evade or defeat the payment of taxes. *See Fegeley,* 118 F.3d at 983; *Dalton v. Internal Revenue Serv.,* 77 F.3d 1297, 1301 (10th Cir.1996). Instead, the statute provides that tax debt is nondischargeable if the debtor "willfully attempted *in any manner* to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C) (emphasis added). Given the inclusion of the phrase "in any manner" in § 523(a)(1)(C), the Court feels compelled to consider both Mr. Wilbert's acts and his omissions.

■ It is undisputed that Mr. Wilbert failed to file timely returns for 1985, 1986, 1987, 1988, 1990, 1991, and 1992, despite his acknowledged duty to do so. (Statement of Material Facts at ¶¶ 5 and 6). Likewise, it is undisputed that Mr. Wilbert failed to pay the assessed taxes for those years, despite his acknowledged obligation to do so. (Id. at ¶¶ 5 and 10). Most courts consider a debtor's failure to file returns and pay taxes as relevant omissions which should be considered in the totality of the debtor's conduct. *See Fegeley,* 118 F.3d at 983; *Birkenstock,* 87 F.3d at 951–52 (it is reasonable to conclude that the debtor attempted to evade or defeat taxes when nonpayment is coupled with a refusal to file returns); *Dalton,* 77 F.3d at 1301; *McGrath v. United States (In re McGrath),* 217 B.R. 389, 394 (Bankr. N.D.N.Y.1997); *Semo v. United States (In re Semo),* 188 B.R. 359, 363 (Bankr. W.D.Pa.1995); *Boch v. United States (In*

*re Boch),* 154 B.R. 647, 658 (Bankr. M.D.Pa.1993). In the Court's view, Mr. Wilbert did much more than simply fail to timely file returns and pay taxes. He placed an "obstacle in the way of the IRS to collect their taxes ...." *Spirito v. United States (In re Spirito),* 198 B.R. 624, 630 (Bankr.M.D.Fla.1996). Rather than cooperating with the IRS, Mr. Wilbert chose to write letters accusing the agency of trampling on his constitutional rights, illegal behavior, harassment, slander, and "terroristic extortion." (Statement of Material Facts at Exs. 1–4). He notified the IRS that he would no longer respond to "computer generated letters." (Id. at Ex. 3). Mr. Wilbert once referred to the IRS as "America's Gestopo/KGB," and he closed one of his letters with the following words:

> I wonder how any of You sleep or face yourselves in the mirror, inasmuch as you are defacto SLAVERS, and will, in the end, distroy [sic] our country and the Constitution in order to keep Your paychecks coming in and your standard of living, even if it means selling the children, Your own Children, into Slavery.
>
> I hope you suffer cancer and die a slow painful death, as all tyrants should.

(Id. at Exs.2 and 4). Under the circumstances here presented, the Court has little difficulty concluding that Mr. Wilbert, through both his acts and omissions, intended to evade or defeat his tax liability. *See Teeslink,* 165 B.R. at 716 (implausible behavior, along with one's failure to cooperate with the IRS, is an indication of willful attempt to evade taxes); *cf. Laurin v. United States (In re Laurin),* 161 B.R. 73, 75 (Bankr.D.Wyo.1993) (debtor intended to avoid paying taxes within the meaning of § 523(a)(1)(C) by sending tax protester materials to the IRS).

■ With respect to the mental requirement contained in § 523(a)(1)(C), the

IRS must demonstrate that Mr. Wilbert "willfully" sought to evade or defeat his taxes. *Griffith,* 206 F.3d at 1396; *Fegeley,* 118 F.3d at 983; *Birkenstock,* 87 F.3d at 952. "[C]ourts have interpreted 'willfully,' ... to require that the debtor's attempts to avoid his tax liability were 'voluntary, conscious, and intentional.'" *Fegeley,* 118 F.3d at 984; *see also Birkenstock,* 87 F.3d at 952 (quoting *Toti,* 24 F.3d at 808). To this end, the IRS must prove the following:

1. that the debtor had a legal duty to file income tax returns;

2. that the debtor knew that he had such a duty; and

3. that the debtor voluntarily and intentionally violated that duty.

*Griffith,* 206 F.3d at 1396; *Fegeley,* 118 F.3d at 984; *Birkenstock,* 87 F.3d at 952; *Bruner,* 55 F.3d at 197. Here, Mr. Wilbert has admitted by way of stipulation that he was cognizant of his duties to file income tax returns and pay taxes. Primarily due to his tax protester beliefs, Mr. Wilbert voluntarily, intentionally, and deliberately opted not to discharge those duties. In his letters to the IRS, Mr. Wilbert complained, among other things, that taxation is a form of involuntary servitude prohibited by the Thirteenth Amendment. That Mr. Wilbert was a tax protester is not a legitimate defense. It is well-settled in American jurisprudence that constitutional challenges to the IRS' authority to collect individual income taxes have no legal merit and are "patently frivolous." [5] *Lonsdale v. United States,* 919 F.2d 1440, 1448 (10th Cir.1990); *Ginter v. Southern,* 611 F.2d 1226, 1229 (8th Cir. 1979), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980); *Kasey v. Comm'r of Internal Revenue,* 457 F.2d 369, 370 (9th Cir.1972) (citations omitted), *cert. denied,* 409 U.S. 869, 93 S.Ct. 197, 34

L.Ed.2d 120 (1972). Mr. Wilbert's refusal to comply with the Internal Revenue Code was based on frivolous constitutional arguments. Such refusal, at least in this Court's opinion, qualifies as a willful attempt to evade or defeat the payment of taxes.

■ As stated by the Seventh Circuit, the "willfulness requirement prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." *Birkenstock,* 87 F.3d at 952; *see also Meyers v. Internal Revenue Serv.,* 196 F.3d 622, 624 (6th Cir.1999). It cannot be said that Mr. Wilbert's failure to comply with the tax laws was the result of confusion or mistake. Instead, he made repeated conscious decisions to violate our nation's tax laws. By filing bankruptcy, Mr. Wilbert wants to walk away from a six-figure federal income tax liability. As noted previously, one of the primary purposes of the Bankruptcy Code is to give an honest debtor a fresh start. "Disallowing a discharge of tax debts owed by debtors who endeavored to evade taxes will not undermine the Bankruptcy Code's fresh start objective; however, it will promote an equally important objective expressed by Congress, namely that the Bankruptcy Code not become an inappropriate tax evasion device." *Spirito v. United States (In re Spirito),* 198 B.R. 624, 630 (Bankr. M.D.Fla.1996).

### CONCLUSION

Having given this matter its careful consideration, the Court concludes that no material questions of fact remain in this proceeding and that the IRS is entitled to summary judgment. Accordingly, based on the reasoning contained herein, the IRS' motion for summary judgment is

---

**5.** The Sixteenth Amendment specifically provides that Congress has the power "to lay and collect taxes on incomes." U.S. CONST. Amend. XVI.

hereby **GRANTED** and Mr. Wilbert's motion for summary judgment is hereby **DE-NIED.**[6] Mr. Wilbert's tax liabilities are nondischargeable under the Bankruptcy Code.[7] A judgment consistent with this opinion shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

### *JUDGMENT*

Judgment is hereby entered for the Defendant, Internal Revenue Service, against the Plaintiff, James T. Wilbert, in the above-styled adversary proceeding in accordance with the Order of the Court entered the 20 day of March, 2001.

---

6. Since the Court had found the taxes in question to be nondischargeable under § 523(a)(1)(C), it is unnecessary for it to determine whether the taxes should be declared nondischargeable under § 523(a)(1)(B).

7. The States of California and New York are named defendants in this adversary proceeding, and the schedules reflect that they are owed taxes in the amounts of $30,000 and $20,000, respectively. Neither state has responded to Mr. Wilbert's complaint. In his summary judgment motion, Mr. Wilbert argues that the two states are in default and that he is therefore entitled to a judgment against them. (Wilbert Mot. Summ. J. at ¶ 34). In *Taylor v. State of Georgia (In re Taylor)*, 249 B.R. 571 (Bankr.N.D.Ga.2000) (Drake, B.J.), the Court held that the debtor's dischargeability action against the Georgia Department of Revenue was barred by the Eleventh Amendment. The reasoning in *Taylor* applies equally to the instant case. Inasmuch as the States of California and New York have sovereign immunity from suit, the Court cannot enter a judgment against them. Consequently, Mr. Wilbert's complaint against the States of California and New York is dismissed.