**In re Leonard I. FISCHER, Debtor.**

**KEY BAR INVESTMENTS, INC., Appellant,**

v.

**Leonard I. FISCHER, Appellee.**

**No. 96–55003.**

United States Court of Appeals, Ninth Circuit.

Submitted May 9, 1997.*

Decided June 16, 1997.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P.

34(a) and Ninth Circuit Rule 34–4.

Gregory S. Cilli, San Diego, CA, for appellant.

Leonard I. Fischer, San Diego, CA, pro se, for appellee.

Before: WALLACE, THOMPSON and T.G. NELSON, Circuit Judges.

PER CURIAM:

Key Bar Investments, Inc. (Key Bar) appeals from the Bankruptcy Appellate Panel's (BAP) affirmance of the bankruptcy court's summary judgment in favor of Leonard Fischer. The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(a). The BAP had jurisdiction under 28 U.S.C. § 158(b)(1). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 158(d), and we affirm.

I

In October 1991, Cahn–Fischer Enterprises, Inc. (CFE) purchased Precision Tune, an automotive maintenance and repair shop, from Key Bar for $220,400 ($95,000 in cash and $125,400 in a promissory note, payable in monthly installments). After a few months, CFE asserted that Key Bar had misrepresented Precision Tune's income at the time of sale and demanded compensation. Both Key Bar and CFE signed a "Compromise Agreement and Mutual Release" (Agreement), dated April 12, 1992, to resolve this dispute. Under the Agreement, which Key Bar drafted, Key Bar paid $5,000 upon execution and reduced the promissory note by $5,000. In addition, Robert Bellowe, president of Key Bar, worked at Precision Tune to provide managerial training.

In November 1992, CFE stopped making payments on the promissory note and abandoned the business. Key Bar demanded payment from Lawrence Cahn and Leonard Fischer of CFE, but both failed to fulfill their obligations. On May 11, 1993, Fischer filed for bankruptcy. On September 13, 1994, Key Bar filed a complaint seeking nondischargeability of its claim pursuant to 11 U.S.C. § 523(a)(2), judgment for the amount of the note, and related damages. The complaint alleged that Fischer misrepresented both the value of the assets that he owned and his business operating experience, there-

by inducing Key Bar to sell Precision Tune to him.

Fischer moved for summary judgment, contending that the Agreement extinguished Key Bar's claim. Fischer asserted that the Agreement, which Key Bar drafted, released the parties from liability for any known or unknown misrepresentations. In other words, Fischer argued that when determining dischargeability, a court should look only to the terms of the contract and not examine the original sales negotiation for evidence of fraud.

The bankruptcy court granted Fischer's motion for summary judgment. It held that the Agreement was a novation of the original purchase contract, and that its terms clearly barred any claims arising out of any alleged misrepresentations in the buyer's financial statements. Further, the bankruptcy court concluded that the Agreement expressly waived the protections of California Civil Code § 1542, thereby allowing the parties to release then unknown claims for fraud. The bankruptcy court also concluded that the Agreement stated that the parties had not relied on any inducements or representations in signing the Agreement. In a well-reasoned unpublished decision, the BAP affirmed the judgment of the district court.

## II

We review decisions of the BAP de novo. *In re Alsberg,* 68 F.3d 312, 314 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). As both the bankruptcy court and the BAP concluded, our decision in *Gonder v. Kelley,* 372 F.2d 94 (9th Cir.1967), squarely controls this case. In *Gonder,* we affirmed for the reasons stated in the district court's opinion, *In re Kelley,* 259 F.Supp. 297 (N.D.Cal.1965). In *In re Kelley,* the district court held that "if it is shown that the note, by express agreement is given and received, as a discharge of the original obligation or tort action, then the execution of the note extinguishes the tort action and it would be error for the court to look behind the note." *Id.* at 299.

Yet that is exactly what Key Bar asks us to do in this case. We agree with the bank-

ruptcy court and the BAP that the Agreement, by its own terms, created a novation, extinguishing all claims arising out of the sale of Precision Tune. The Agreement, which Key Bar drafted and asked Fischer to sign, repeatedly indicates that it serves as a novation:

> 1. * * * By executing this settlement agreement, each of the parties intends to and does hereby extinguish the obligations heretofore existing between them.

> *      *      *

> 3. Each party, in consideration of the promises and concessions made by the other, hereby compromises and settles any and all past, present or future claims, demands, obligations, or causes of action, whether based on tort, contract, or other theories of recovery, which that party has or which may later accrue to or be acquired by that party against the other party and other party's predecessors and successors in interest, heirs, and assigns, arising from the subject matter of the actions described ... [in] this Agreement.

> *      *      *

> (e) Buyer and Seller agree that this compromise and settlement shall constitute a bar to all claims arising out of any alleged misrepresentations in financial statements provided by Buyer.

> *      *      *

> 5. (a) Each party acknowledges and agrees that the release given to the other party upon executing this Agreement applies to all claims for injuries, damages, or losses to their own persons and property, real or personal (whether these injuries, damages, or losses are known or unknown, foreseen or unforeseen, patent or latent) which they may have against the other party....

> *      *      *

> (c) Each party understands and acknowledges that ... even if they should eventually suffer additional damages arising out of the sale [of Precision Tune], excepting damages arising out of the terms of this Agreement, they will not be able to make any claim for those damages. Fur-

thermore, each party acknowledges that they consciously intend these consequences even as to claims for damages that may exist as of the date of this release but which they do not know exist, and which, if known would materially affect their decision to execute this release, regardless of whether their lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

We doubt that the parties could have made their intentions to create a novation any clearer. *Gonder* dictates that the claims at issue here do not qualify as "nondischargeable debt" under 11 U.S.C. § 523(a)(2).

Key Bar asserts that *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and *In re Daley,* 776 F.2d 834 (9th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), have implicitly overruled *Gonder.* These "res judicata" cases do not control our case, which involves a voluntary agreement between two parties that created a novation, releasing either side from liability arising from the original contract. Key Bar's argument that we should ignore controlling precedent is especially unavailing when one considers that Key Bar drafted this contract and asked Fischer to sign it.

AFFIRMED.