In re Terrance J. MYERS, Debtor.

Terrance J. MYERS, Appellant,

v.

INTERNAL REVENUE SERVICE,
Appellee.

BAP No. 97–8059.

United States Bankruptcy Appellate Panel
of the Sixth Circuit.

Submitted Dec. 3, 1997.

Decided Feb. 11, 1998.

Mark R. McBride, on brief, Toledo, OH, for Appellant.

Gerald C. Miller, U.S. Department of Justice, Tax Division, Washington, DC, for Appellee.

## OPINION

The Debtor appeals the bankruptcy court's grant of summary judgment to the government on the issue of dischargeability of taxes under 11 U.S.C. § 523(a)(1)(C). The bankruptcy court correctly held that the government was entitled to judgment.

## I. ISSUES ON APPEAL

1) Whether the Debtor's voluntary submission to the federal tax system in 1985 is a defense to the Debtor's willful attempt to evade or defeat taxes between 1980 and 1983.

2) Whether the bankruptcy court properly applied summary judgment principles in finding the Debtor's federal tax liability nondischargeable under 11 U.S.C. § 523(a)(1)(C).

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel of the Sixth Circuit. 28 U.S.C. § 158(b)(6). The government timely elected to have this appeal considered by the United States District Court for the Northern District of Ohio. Subsequently, all parties agreed to the transfer of this case to the BAP.

The bankruptcy court's grant of summary judgment to the government is a final appealable order reviewed de novo. *See Belfance v. Bushey (In re Bushey )*, 210 B.R. 95, 98 (6th Cir. BAP 1997). De novo means that the appellate court determines the law independently of the trial court's determination. *Corzin v. Fordu (In re Fordu )*, 209 B.R. 854, 857 (6th Cir. BAP 1997).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.BANKR.P. 7056 (incorporating FED.R.CIV.P. 56(c)). "In determining whether the non-moving party has raised a genuine issue of material fact, '[t]he evidence of [appellant] is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 814 (6th Cir. 1997) (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992) (citations omitted)). To preclude summary judgment, "the non-moving party ... is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Gaines v. Runyon*, 107 F.3d 1171, 1174–75 (6th Cir.1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

## III. FACTS

The Debtor filed Chapter 7 on January 27, 1993. The Debtor scheduled a debt for federal income taxes for 1980 through 1983. A discharge was entered on June 28, 1993. The bankruptcy court was not asked to rule on the dischargeability of the Debtor's tax liability during the Chapter 7 case.

After the Debtor's discharge, the IRS pursued the Debtor, including garnishment of his wages, to collect the 1980–1983 tax liability. The Debtor returned to the bankruptcy court to determine whether the government violated the discharge injunction of 11 U.S.C. § 524. The Debtor's complaint also sought return of all money seized by garnishment, interest on those funds, and attorney fees. The government responded that the taxes were not discharged in the bankruptcy case because of the Debtor's willful attempt to evade or defeat federal tax liabilities.

The government moved for summary judgment. The government stated as undisputed that the Debtor failed to timely file tax returns for 1980 through 1983 while having

income that far exceeded the minimum necessary to trigger the statutory filing requirement; failed to pay his tax liability in full for those years; claimed an excessive number of withholding allowances on Forms W–4 submitted to his employers; and claimed that he was exempt from federal tax because he chose not to voluntarily submit himself to federal income taxation. The government argued that these facts justified a finding under *Toti v. United States (In re Toti)*, 24 F.3d 806 (6th Cir.), *cert. denied*, 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994), that the Debtor willfully attempted to evade or defeat his tax liability for 1980 through 1983 within the meaning of § 523(a)(1)(C).

The Debtor did not dispute the facts alleged by the government but opposed summary judgment, pointing to allegedly mitigating factors. First, the Debtor asserted that unlike Toti, he "saw the light" in 1985 and voluntarily submitted himself to the tax system. Second, the Debtor stated that he was assured by an IRS agent in late 1985 that he had met his obligation to file returns by executing Forms 4549 and 870. Third, the Debtor made payments to the IRS for several years and argued that he had reformed and should not be punished for his ultimate financial inability to cure his tax liability. He asserted that the bankruptcy code did not "forever preclude[ ] a rehabilitated taxpayer from the statutory relief available under Title 11." Alternatively, the Debtor urged the bankruptcy court to tap its equitable powers under 11 U.S.C. § 105 to discharge the taxes.

The bankruptcy court granted summary judgment to the government. *Meyers v. IRS (In re Meyers)*, Case No. 93–30221, Adv. No. 94–3132 (Bankr.N.D.Ohio May 6, 1997). Applying the standard adopted by the Sixth Circuit in *Toti*, the bankruptcy court found that the Debtor's omissions—failure to file his tax returns and failure to pay taxes—and affirmative acts—claiming excessive exemptions on the Forms W–4 submitted to his employers—constituted a willful attempt to evade or defeat taxes within the meaning of § 523(a)(1)(C). The bankruptcy court observed it "unlikely in the extreme that [the Debtor] did not know that the law required everyone to file income tax returns notwith-

standing his 'belief' that such a law required voluntary compliance." *Id.* at 6. The Internal Revenue Code provides the remedy, the court reminded the Debtor, for those who believe a tax is imposed inappropriately. The bankruptcy court rejected the argument that the Debtor's subsequent conduct absolved him of his earlier malfeasance or "unrung" the § 523(a)(1)(C) bell. The court found that § 523(a)(1)(C) does not require continuous wrongful conduct. The bankruptcy court declined to invoke equitable powers to find the taxes dischargeable, observing that even if equity were available to relieve a debtor of the effects of § 523(a)(1)(C), this was not the appropriate case.

## IV. DISCUSSION

### A. Dischargeability Under § 523(a)(1)(C).

■ Section 523(a)(1)(C) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . . .

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. § 523(a)(1)(C). In *Toti*, the Sixth Circuit construed the phrase "willfully attempted in any manner to evade or defeat such tax" as "consistent with the definition found in other civil tax cases, which equates 'willful' with voluntary, conscious, and intentional evasions of tax liabilities." *Toti*, 24 F.3d at 809 (citing *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988); *Domanus v. United States*, 961 F.2d 1323, 1326 (7th Cir.1992)). Under that standard, "a plain reading of § 523(a)(1)(C) includes both acts of commission and acts of omission." *Id.* Toti's tax debt was nondischargeable because Toti "had the wherewithal to file his return and pay his taxes, but he did not fulfill his obligation ... [and those omissions were] voluntar[y], conscious[ ], and intentional[ ]." *Id.*

■ A year later, in an unpublished decision, the Sixth Circuit cited *Toti* for the

proposition that the phrase "in any manner" is "broad enough to encompass attempts to thwart payment of taxes." *United States v. Sumpter (In re Sumpter)*, Nos. 94–1439 & 94–1440, 1995 WL 501947, at *3 (6th Cir. Aug. 22, 1995) (citations omitted). The Seventh Circuit summarized the § 523(a)(1)(C) precedent and concluded, consistent with *Toti* and *Sumpter*, that "nonpayment of tax alone is not sufficient to bar discharge of a tax liability[,] [citation omitted]" but "failure to pay a known tax duty is 'relevant evidence which a court should consider in the totality of conduct to determine whether ... the debtor willfully attempted to evade or defeat taxes.'" *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996) (quoting *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir.1996)).

Here, the Debtor's undisputed conduct went beyond the mere nonpayment of taxes. The Debtor failed to file tax returns for 1980, 1981, 1982 and 1983. During those years the Debtor received income ($43,099.23, $22,-718.11, $21,615.49, and $27,129.87) that far exceeded the statutory minimum to trigger filing requirements. For each year the Debtor claimed excessive exemptions on the Forms W–4 that he provided to his employer. The bankruptcy court properly concluded that these omissions and commissions constituted a voluntary, conscious and intentional evasion of tax liability.

The Debtor's argument that nondischargeability punishes him for the mere nonpayment of taxes that resulted from his subsequent inability to meet the terms of repayment was rejected by the Seventh Circuit in *Birkenstock*:

> [J]ust as nonpayment of tax alone will not justify nondischargeability, an inability to pay debts in subsequent years is not a defense to previous intentional attempts to evade or conceal one's tax liability. To hold otherwise would swallow the § 523(a)(1)(C) exception to dischargeability because even the most dishonest [debtor] can demonstrate an inability to pay his debts.

*Birkenstock*, 87 F.3d at 953.

The § 523(a)(1)(C) bell is not "unrung" by a tax protestor's decision to come in from the cold. Section 523(a)(1)(C) speaks plainly of "a tax with respect to which the debtor ... willfully attempted in any manner to evade or defeat such tax...." There is no indication that Congress intended to enable a debtor to purge this willful misconduct by confession or by the passage of time. Congress placed time and other limits on the nondischargeability of taxes in § 523(a)(1)(A) and (B). No limitations of the sort argued by the Debtor appear in § 523(a)(1)(C). While a debtor's conduct over time may be evidence relevant to whether there was a willful attempt to evade or defeat a tax in the first instance, where misconduct constitutes a willful attempt to evade or defeat a tax, subsequent penance is not a defense to nondischargeability under § 523(a)(1)(C).

The Debtor cites *Spirito v. United States (In re Spirito)*, 198 B.R. 624 (Bankr.M.D.Fla. 1996), for the proposition that a violation of § 523(a)(1)(C) can be undone. In *Spirito*, the debtors cooperated with the government after their attempts at evasion were uncovered, advised the IRS of their moves to Canada and back to Florida, and contacted the IRS to establish a payment schedule. The *Spirito* court conceded the possibility that subsequent conduct could mitigate a § 523(a)(1)(C) violation, but concluded that the § 523(a)(1)(C) bell had not been "unrung." The Spiritos's misconduct exceeded the mere failure to pay taxes, since they sent false and frivolous correspondence to the IRS in which they asserted that they had no duty to pay taxes. They took affirmative action to remove themselves from the federal tax system, including the opening of a nominee account to shield assets from levy. The Spiritos were not, the bankruptcy court concluded, the "honest but unfortunate" debtors entitled to a discharge of taxes in bankruptcy. *Spirito*, 198 B.R. at 630.

Under the *Spirito* court's own analysis, it is not obvious when a debtor who willfully attempted to evade or defeat a tax liability could become "honest but unfortunate" based on a subsequent change of heart. No reading of *Spirito* supports the broad exception to § 523(a)(1)(C) argued by this Debtor.

**B. Summary Judgment Standard.**

The bankruptcy court viewed the evidence and drew all inferences most favorably

to the Debtor. The Debtor's argument to the contrary is based on the bankruptcy court's statement that it found "unlikely in the extreme that [the Debtor] did not know that the law required everyone to file income tax returns, notwithstanding [the Debtor's] 'belief' that [the] law required voluntary compliance." *Meyers,* slip op. at 6. The debtor maintains that his "beliefs" or "misunderstanding" of the tax laws required a credibility determination by the bankruptcy court and precluded summary judgment for the government.

The Debtor's belief that the tax code required only voluntary participation was not based on a misunderstanding of the tax laws; it was admittedly just a restatement of the Debtor's rhetoric that the tax code is unconstitutional. The Debtor responded to the government's interrogatory that in 1985 he realized that "his interpretation of the U.S. Constitution was in error...." The Debtor's attorney's affidavit in opposition to the government's motion for summary judgment stated that "in approximately mid-late 1985, I convinced Mr. Myers that his unconstitutional stand relative to the Federal tax system was fruitless...." The bankruptcy court accepted these facts as stated by the Debtor. It is the conclusion drawn by the court from these facts with which the Debtor disagrees.

In *Cheek v. United States,* 498 U.S. 192, 203–04, 111 S.Ct. 604, 611–12, 112 L.Ed.2d 617 (1991), the United States Supreme Court held that it was "error to instruct the jury to disregard evidence of [a taxpayer's] understanding that, within the meaning of the tax laws, he was not a person required to file a return or to pay income taxes and that wages are not taxable income, as incredible as such misunderstandings of and beliefs about the law might be." However, attacks against the constitutionality of the federal tax system are treated differently. The Court explained:

> [Taxpayer] asserted in the trial court that he should be acquitted because he believed in good faith that the income tax law is unconstitutional as applied to him and thus could not legally impose any duty upon him of which he should have been aware. Such submission is unsound, not because [taxpayer's] constitutional arguments are not objectively reasonable or frivolous, which they surely are, but because the [*United States v.*] *Murdock,* [290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933)]–[*United States v.*] *Pomponio,* [429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976)] line of cases does not support such a position. Those cases construed the willfulness requirement in the criminal provision of the Internal Revenue Code to require proof of knowledge of the law. This was because in our complex tax system, uncertainty often arises even among taxpayers who earnestly wish to follow the law, and [i]t is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care....
>
> Claims that some of the provisions of the tax code are unconstitutional are submissions of a different order. They do not arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, they reveal full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable....
>
> We do not believe that Congress contemplated that such a taxpayer, without risking criminal prosecution, could ignore the duties imposed upon him by the Internal Revenue Code and refuse to utilize the mechanisms provided by Congress to present his claim of invalidity to the courts and to abide by their decisions....
>
> We thus hold that in a case like this, a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper.

*Id.* at 204–06, 111 S.Ct. at 612–13 (internal quotations, citations, and footnotes omitted).

In this case, the Debtor's (now abandoned) view that the federal tax laws are unconstitutional was not an innocent mistake or misinterpretation. The Debtor admits he intentionally did not file returns, did not pay taxes and claimed excessive withholding allowances based on an (erroneous) belief that the tax system was unconstitutional. The bankrupt-

cy court did not err in resolving this defense against the Debtor on summary judgment.

## V. CONCLUSION

The bankruptcy court's grant of summary judgment to the government is **AFFIRMED**.