**In re Frank P. FRANCIS, also known as Francis General Construction, Debtor.**

**ED SCHORY & SONS, INC. and Robert G. Schory, Jr., Plaintiffs–Appellees,**

v.

**Frank P. FRANCIS, also known as Francis General Construction, Defendant–Appellant.**

**BAP No. 98–8023.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Sept. 2, 1998.

Decided Nov. 10, 1998.

---

Richard A. Princic, Day, Ketterer, Raley, Wright & Rybolt, Canton, OH, for Appellees.

Joseph F. Scott, Canton, OH, for Appellant.

Before LUNDIN, RHODES, and STOSBERG, Bankruptcy Appellate Panel Judges.

## OPINION

The Debtor, Frank P. Francis, has appealed the bankruptcy court's grant of summary judgment in favor of the Plaintiffs (Schory) in a nondischargeability action under § 523(a)(2)(A). The bankruptcy court determined that due to several prior state court decisions, collateral estoppel barred Francis from relitigating whether his debt resulted from his fraud. The Ohio Supreme Court had previously held that a letter in which Francis admitted that he had fraudulently misappropriated funds from Schory was substantially true. The bankruptcy court further determined that a prepetition settlement agreement between the parties did not operate as a novation which extinguished Schory's fraud claim for purposes of § 523(a)(2)(A).

The issue of novation in the context of § 523(a)(2)(A) is a novel issue in the Sixth Circuit. The Panel finds the reasoning of *United States v. Spicer*, 57 F.3d 1152 (D.C.Cir.1995) persuasive, and holds that a general release as part of a tort settlement does not constitute a novation which extinguishes a creditor's fraud claim in the con-

text of § 523(a)(2)(A). Furthermore, the bankruptcy court properly applied collateral estoppel. Accordingly, the Panel affirms the bankruptcy court's order finding that the debt is nondischargeable.

## I. ISSUES ON APPEAL

There are two issues on appeal. The first is whether the bankruptcy court erred in granting summary judgment on the basis of collateral estoppel. The second is whether the parties' prepetition settlement agreement operates as a novation that extinguishes Schory's nondischargeability claim under § 523(a)(2)(A), which did not exist at the time of the prepetition settlement agreement.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations omitted).

Conclusions of law are reviewed de novo. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629 (6th Cir.1994). Determinations regarding summary judgment are reviewed de novo. *Myers v. IRS (In re Myers)*, 216 B.R. 402 (6th Cir. BAP 1998). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (6th Cir. BAP 1998) (citing *In re Schaffrath*, 214 B.R. 153, 154 (6th Cir. BAP 1997)).

## III. FACTS

In 1987, Francis and Schory formed a partnership which ultimately resulted in litigation between the two parties. Schory filed a lawsuit against Francis alleging fraud, misrepresentation, and misappropriation of funds. Francis filed counterclaims. On March 14, 1991, the parties reached a settlement. Pursuant to the settlement agreement, Francis signed a cognovit note for $130,000 secured by a mortgage on Francis's real property. The parties agreed to release each other from all claims relating to the litigation.

Ultimately, Francis defaulted on the cognovit note and Schory filed a foreclosure action against the real property securing the note. The parties eventually entered into an amended settlement agreement on March 2, 1991. The following letter dated May 1, 1991, was attached to the settlement agreement:

Dear Bob:

I am sincerely sorry for all the grief and aggravation I have caused you and your family. I acknowledge by this letter that I fraudulently misappropriated the sum of $370,000 from the Arlington General Partnership on the Arlington Road and Whipple Avenue Projects. This was done by knowingly misrepresenting the construction expenses of Francis General Construction, Inc. I regret any problems which I may have caused your family and your business. I also apologize for filing the counterclaim and calling the police.

Very truly yours,
/s/
Frank P. Francis, Individually and as
/s/
Frank P. Francis, President
Francis General Construction, Inc.

Francis defaulted on the amended settlement agreement, and Schory again filed a foreclosure action. Francis filed a counterclaim asserting that he had been coerced into signing the letter and that Schory had defamed him by showing the letter to others.

The Ohio Court of Common Pleas granted summary judgment in favor of Schory on all of Francis's claims. Francis appealed to the Ohio Court of Appeals, which affirmed the trial court's decision that there was no defamation because the admissions in the letter were "substantially true." Francis appealed

to the Ohio Supreme Court, which affirmed the judgment of the Court of Appeals on the basis that truth is an absolute defense to defamation and the letter was true. *Ed Schory & Sons. v. Francis*, 75 Ohio St.3d 433, 662 N.E.2d 1074 (Ohio 1996).

On May 30, 1997, Francis filed a petition under Chapter 7 of the Bankruptcy Code. Schory filed an adversary proceeding for a determination that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). The bankruptcy court applied collateral estoppel and determined that the debt was nondischargeable under § 523(a)(2)(A) based on Francis's admissions in his letter of May 1, 1991. Francis appealed.

## IV. DISCUSSION

**A. *The bankruptcy court properly applied collateral estoppel in determining that the debt is nondischargeable under § 523(a)(2)(A) due to Francis's fraud.***

The bankruptcy court held that the principle of collateral estoppel bound the court to follow findings of the state courts that Francis's admission of fraud was substantially true. Therefore, the bankruptcy court granted summary judgment, holding the debt nondischargeable under § 523(a)(2)(A).

Collateral estoppel requires "that 'the determination of a factual or legal issue in a judgement is conclusive in subsequent litigation if it was "actually litigated and determined," and the determination was essential to the judgment.'" *Corzin v. Fordu (In re Fordu )*, 209 B.R. 854, 862 (6th Cir. BAP 1997) (quoting *Shelar v. Shelar*, 910 F.Supp. 1307, 1312 (N.D.Ohio 1995)). The Sixth Circuit has held that the application of collateral estoppel in a nondischargeability action depends upon whether the applicable state law would give collateral estoppel effect to the judgment. *Bay Area Factors v. Calvert (In re Calvert )*, 105 F.3d 315 (6th Cir.1997).

■ In order to successfully assert collateral estoppel under Ohio law, a party must plead and prove the following elements: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

The first element is clearly met in this case, as the adversary proceeding involved the same parties as the state court litigation.

■ The bankruptcy court also properly determined that the second element is met. "In Ohio, a grant of summary judgment represents 'a final determination of the rights of the parties in an action and hence comes within the definition of a judgment as set forth in Ohio Revised Code Section 2323.01. (Repealed; see now CIV. R. 54).'" (Bankruptcy Court Mem. Of Decision 3/17/98 at 8) (citing *Priester v. State Foundry Co.*, 172 Ohio St. 28, 173 N.E.2d 136 (Ohio 1961)).

■ The bankruptcy court also properly found that the third element is met, stating:

> Both the Ohio Court of Appeals and the Ohio Supreme Court affirmed the trial court's granting of summary judgment in favor of Schory by holding that the trial court did not err in finding the letter was "substantially true" and was, thus, a complete defense to any libel claims asserted by the Debtor. Under these circumstances, the "actually litigated" requirement for the application of collateral estoppel is met and the state court judgment and its appellate affirmances that the Debtor committed a fraud upon Schory through the misappropriation of partnership funds is entitled to collateral estoppel effect under Ohio law.

(Mem. Of Decision 3/17/98 at 8–9.) The state court actually decided the issue of the truth of the letter. Furthermore, the finding that the letter was true was essential to the judgment, as it was the basis for granting summary judgment.

The fourth element requires that the issues be identical.

If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other.

*Monahan v. Eagle Picher Indus.*, 21 Ohio App.3d 179, 486 N.E.2d 1165, 1168 (1984) (citing *Norwood v. McDonald*, 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67 (1943) (internal citations omitted)).

When the Ohio courts addressed the defamation issue, they found that Francis's admission of fraud was true. The elements required to prove fraud under Ohio law are:

(a) representation or, when there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709, 712 (Ohio 1987).

In order to make the determination that Francis's admission was true, the Ohio courts necessarily had to consider the elements of fraud. The bankruptcy court properly noted, "Although the state courts were not presented with a fraud claim, by finding that the contents of the May 1, 1991, letter were true, these courts did determine that the Debtor committed a fraud upon Schory." (Mem. Of Decision 3/17/98 at 12.) Accordingly, if the elements of fraud under Ohio law are the same as the elements required under § 523(a)(2)(A), the bankruptcy court was bound by the Ohio court's determination that Francis committed fraud.

Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

A finding of fraud under § 523(a)(2)(A) requires proof of the following elements:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998).

The Panel concludes that the bankruptcy court properly found "that the elements of a dischargeability claim under 11 U.S.C. § 523(a)(2)(A) are virtually identical to the elements of a fraud claim in Ohio." (Mem. Of Decision 3/17/98 at 11.) Therefore, the bankruptcy court correctly applied collateral estoppel in this case.

**B. The bankruptcy court properly found that the parties' prepetition settlement agreement was not a novation which extinguished Schory's subsequent nondischargeability claim under § 523(a)(2).**

The question whether execution of a promissory note extinguishes a prior cause of action has been debated for almost 50 years, resulting in a substantial case history. In 1949, the Seventh Circuit held,

The general rule is that a promissory note is but the evidence of indebtedness and does not discharge the debt for which it was given.... But if it is shown that the note, by express agreement, is given and received, as payment or waiver of the antecedent tort action, and if the agreement is

that the note operates to discharge the original obligation and substitute a new one therefor-in other words, that it is taken in payment of the debt then the original debt is fully satisfied by acceptance of the note.

*Maryland Casualty Co. v. Cushing*, 171 F.2d 257, 258–59 (7th Cir.1948) (internal citations omitted.)

Later, the Eleventh Circuit considered the issue in *Greenberg v. Schools*, 711 F.2d 152 (11th Cir.1983), holding, "a debt which originates from the debtor's fraud should not be discharged simply because the debtor entered into a settlement agreement." *Id.* at 156.

*In re West*, 22 F.3d 775 (7th Cir.1994), held that a general release included a release of a nondischargeability claim in bankruptcy, stating, "even if the obligation arising from Ms. West's embezzlement would have been non-dischargeable due to its fraudulent nature, no allegations of fraud surround the note, and the note substituted a contractual obligation for a tortious one. . . . Thus, pursuant to *Maryland Casualty*, dischargeability turns on the note, rather than the superceded obligation." *Id.* at 777.

On the other hand, *United States v. Spicer*, 57 F.3d 1152 (D.C.Cir.1995), declined to follow *West* and *Maryland Casualty* because "it improperly elevates legal form over substance" to allow a debtor to discharge a debt based on fraud. *Id.* at 1155. The court rejected the argument that a settlement extinguishes a nondischargeability claim "because it is contrary to the public policy embodied in § 523(a)(2)(A) of preventing fraudulent debtors from escaping their obligations at the expense of innocent defrauded creditors." *Id.* The court found that it was more appropriate to "inquire into the factual circumstances behind the settlement agreement to ascertain whether . . . the debt . . . was derived from the alleged fraudulent conduct. . . ." *Id.* (quoting *Greenberg*, 711 F.2d at 156). The court stated, "We cannot agree with a rule under which, through the alchemy of a settlement agreement, a fraudulent debtor may transform himself into a nonfraudulent one, and

thereby immunize himself from the strictures of § 523(a)(2)(A)." *Id.*

■ The Sixth Circuit has not yet ruled on the issue of novation in the context of § 523(a)(2)(A). The Panel holds that a general release as part of a settlement of a tort claim does not serve as a novation allowing a debt incurred by fraud to be discharged in bankruptcy. In the context of this case, the Panel agrees with *Spicer* and rejects *West* for several reasons.

First, *West* overextended the holding of *Maryland Casualty*, which was that a novation can only occur through a settlement if it was the parties' express intention that a contract claim be substituted for the original fraud debt. However, a generally worded release in a tort settlement agreement does not state or suggest any intention by either party to release bankruptcy rights and claims. Indeed, in the present case, nothing in the parties' agreements suggests either that Francis intended to release his right to claim bankruptcy or that Schory intended to release his bankruptcy nondischargeability claims.

Second, the *Spicer* holding parallels the law applicable when a creditor claims that a debtor has contractually waived the right to seek a discharge. 11 U.S.C. § 727(a)(10) permits a waiver of the bankruptcy discharge but only if executed postpetition. Further, case law provides that a provision in a prepetition settlement agreement which waives a party's right to file bankruptcy is unenforceable as against public policy. *See Giaimo v. Detrano (In re Detrano )*, 222 B.R. 685, 687 (Bkrtcy.E.D.N.Y.1998).

Third, the *West* holding undermines the settlement of tort claims. If a prepetition general release is sufficient to extinguish a later nondischargeability claim in bankruptcy, a defendant might be motivated to settle a tort claim for any amount and then simply file bankruptcy to seek to discharge the settlement debt. On the other side, a plaintiff, naturally concerned about that strategy, might be less willing to settle the tort claim. The law ought to facilitate settlements, not obstruct them.

Fourth, the *West* holding circumvents the explicit limitation in Bankruptcy Code against the discharge of debts incurred by fraud. Section 523(a)(2)(A) plainly provides that a debt incurred as a result of fraud is nondischargeable in bankruptcy. In the present case, Francis committed a fraud against Schory and has admitted both the fraud and the resulting debt. The settlement did not negate either the fraud, the admission, or the debt.

On several occasions, the Supreme Court has stated that Congress clearly intended fraud debts to be nondischargeable. Most recently the Court stated, "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. Hilda de la Cruz,* —— U.S. ——, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (quoting *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991)). *See also Brown v. Felsen,* 442 U.S. 127, 128, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767 (1979) ("[A]s the Court has noted, the Act limits [the bankruptcy] opportunity to the 'honest but unfortunate debtor.'" quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

The Supreme Court has also concluded, "[I]t is unlikely that Congress ... would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.'" *Cohen v. Hilda de la Cruz,* —— U.S. at ——, 118 S.Ct. at 1219 (quoting *Grogan v. Garner,* 498 U.S. at 287, 111 S.Ct. at 659–660). Because *Spicer* recognizes this clear Congressional intent, we choose to follow it.

The Panel also follows *Spicer* because *Brown v. Felsen* compels the *Spicer* result. In *Brown v. Felsen,* the creditor filed suit alleging both contract and fraud claims against the debtor, but the stipulation and judgment by which the parties later settled did not specifically identify the basis of the liability. The debtor then filed bankruptcy. That filing, the Supreme Court noted, "placed the rectitude of his prior dealings squarely at issue...." *Brown,* 442 U.S. at 128, 99 S.Ct. at 2208.

In response to the creditor's claim that the debt was nondischargeable due to the debtor's fraud, the debtor asserted that under the doctrine of res judicata, the creditor was precluded from asserting fraud, as the prior stipulated judgment did not include a finding of fraud. After reviewing the policy of repose that underlies the doctrine of res judicata, the Court rejected its application in this context, stating:

> Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry. Petitioner [creditor] contends, and we agree, that here careful inquiry reveals that *neither the interests served by res judicata, the process of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing petitioner from submitting additional evidence to prove his case.*

*Id.,* 442 U.S. at 132, 99 S.Ct. at 2210. (Emphasis added.)

The Court went on to note that the creditor's nondischargeability claim was not an attack upon the original judgment; rather, it was a new defense to the "bankruptcy which the respondent [debtor] has interposed between petitioner and the sum due him." *Id.* Thus, the Court concluded that it was the debtor's bankruptcy filing, not the creditor's nondischargeability complaint, that had upset the repose that would otherwise justify treating their earlier stipulated judgment as final.

The Court then rejected the debtor's argument that a creditor can avoid the application of res judicata and preserve a nondischargeability claim simply by bargaining for a preservation of that right in their stipulated judgment. The Court stated, "It makes little sense, however, to resolve a federal dischargeability question according to whether or not the parties in the state court waived their right to engage in hypothetical litiga-

tion in an inappropriate forum." *Id.*, 442 U.S. at 137, 99 S.Ct. at 2212.

Finally, the Court quoted from the legislative history of this discharge exception, which stated that the exception was intended "to exclude beyond peradventure certain liabilities growing out of offenses against good morals." The Court offered this legislative history as evidence that "Congress intended the fullest possible inquiry ..." *Id.*, 442 U.S. at 138, 99 S.Ct. at 2213 (citing H.R.Rep. No. 1698, 57th Cong., 1st Sess., 3, 6 (1902). See 36 Cong. Rec. 1375 (1903)). The Court then concluded, "[A]ll debts arising out of the conduct specified in § 17 should be excepted from discharge and the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Id.*, 442 U.S. at 138, 99 S.Ct. at 2213.[1]

The only difference between *Brown v. Felsen* and this case is that in *Brown*, the parties' settlement was incorporated into a judgment, and as a result, the debtor's arguments focused on res judicata instead of release. Thus, the question becomes whether the result should be different in the case of a judgment. The court in *West* distinguished *Brown v. Felsen* with this single sentence, "A judgment, however, is far removed from a release voluntarily given by a creditor." 22 F.3d at 778. But this distinction is unsatisfactory on two levels. First, it ignores that the judgment in *Brown* was a consent judgment, and was thus the functional equivalent of "a release voluntarily given by the creditor." Second, although the doctrines of release and res judicata are different in significant respects, *West* offers no explanation as to why those differences are significant in the context of a nondischargeability claim under 523(a)(2) and the Panel cannot find any such explanation.

Indeed, in this case, if the agreement between Schory and Francis had been incorporated into a consent judgment as it was in *Brown*, then that decision would plainly compel a result for Schory. There is no principled basis on which to conclude that Schory

should be barred from the opportunity to prove the true nature of the debt just because the parties elected to keep their settlement agreement private and not to burden the state court with an unnecessary consent judgment. Accordingly, the Panel concludes that under *Brown*, Schory's settlement with Francis did not release Schory's bankruptcy nondischargeability claim.

The Panel rejects the dissent's arguments that because nothing in the Bankruptcy Code precludes a creditor from a prepetition release of a nondischargeability claim under § 523(a)(2), state law controls the result. The state law result on whether a creditor can release a § 523(a)(2) claim is simply not relevant, because the Congressional mandate in § 523(a)(2) for the nondischargeability of fraud debts is so strong that it trumps any state release law (or res judicata law) that might otherwise apply in favor the debtor.

The Panel also rejects the dissent's argument that there is no parallel provision in the Code that protects creditors in the way that § 727(a)(10) protects debtors. Rather, we conclude that § 523(a)(2), as interpreted and applied by the Supreme Court, is itself the parallel to § 727(a)(10) that the dissent seeks. Within its context, each section effectively limits to the bankruptcy process the parties' exercise of their bankruptcy rights, as well as their waivers of those rights. Thus, when Schory and Francis settled and exchanged mutual releases before Francis filed bankruptcy, Francis did not give up his right to seek a discharge of his debts in bankruptcy and Schory did not give up his right to object to the discharge of Francis's fraud debt under § 523(a)(2) in the event of such a bankruptcy.

## V. CONCLUSION

The bankruptcy court properly applied collateral estoppel to determine that the debt evidenced by the cognovit note is nondischargeable. The Panel follows *Spicer* and holds that a prepetition general settlement agreement does not extinguish a claim for

---

1. When the Bankruptcy Act was repealed in 1979, § 17 was replaced by § 523 of the Bankruptcy Code.

bankruptcy nondischargeability. The bankruptcy court's order holding that the debt is nondischargeable under § 523(a)(2)(A) is **AFFIRMED.**

LUNDIN, dissenting.

I have no disagreement with the Panel's careful analysis of how collateral estoppel might operate in this adversary proceeding, but I believe the Panel has the cart before the horse: if this creditor's prepetition Settlement and Release Agreement with the Debtor includes an enforceable release of this § 523(a)(2) action, then it was not appropriate for the bankruptcy court to reach the merits of the creditor's collateral estoppel argument. On summary judgment, the bankruptcy court and the Panel have resolved as a matter of law that the creditor could not have released its nondischargeability action in the prepetition settlement agreement with the Debtor. Nothing in bankruptcy law requires this result. Because I find the settlement agreement ambiguous under applicable principles of state law, I would reverse the bankruptcy court's grant of summary judgment and remand to resolve the parties' intent at the time of settlement.

Although Congress has legislated that a written waiver *by a debtor* of discharge in bankruptcy is enforceable only if executed after the petition and approved by a bankruptcy court, *see* 11 U.S.C. § 727(a)(10), there is no analogous provision of federal law that conditions or prohibits enforcement in bankruptcy of a creditor's prepetition agreement to release its cause of action under § 523(a)(2). Put another way, nothing in the Bankruptcy Code interrupts the ordinary capacity of creditors under nonbankruptcy law to contract for the release of claims that are or might be nondischargeable in bankruptcy. As recognized by the Seventh and Ninth Circuits, if enforceable under state law, a creditor's prepetition release of a potential cause of action under § 523 of the Bankruptcy Code precludes that creditor's § 523 complaint without regard to the merits of the underlying dispute. *In re West,* 22 F.3d 775 (7th Cir.1994); *Key Bar Invs., Inc. v. Fischer (In re Fischer),* 116 F.3d 388 (9th Cir.1997).

The basis of this nondischargeability action is the fraud confessed by the Debtor in the letter attached to the Amended Settlement Agreement. That fraud predates the Settlement Agreement and there is no allegation of fraud or other misconduct in connection with the Settlement Agreement itself. That earlier fraud cannot be the basis for this § 523(a)(2) action if the Settlement Agreement released the Plaintiff's right to bring a § 523 action based on the earlier fraud. This is the horse that must be ridden by the Plaintiff before we reach the collateral estoppel arguments addressed by the Panel.

The lengthy March 14, 1991, agreement is titled "Settlement Agreement and Release." Its preamble refers to all pending litigation between the parties including the claims of fraud that the Debtor later confessed. The agreement contains these important statements of intent:

WHEREAS, the parties desire to fully settle, adjust and compromise any and all claims between and among them, whether alleged or not-alleged, and whether contained or not contained, in Case Number 90–1691 in the Common Pleas Court of Stark County, Ohio;.... Plaintiffs, Robert G. Schory, Jr., and Ed Schory & Sons, Inc., for their part, agree to dismiss with prejudice the action pending in Stark County Court of Common Pleas, Case Number 90–1691, and further agree to release and forever discharge Defendants, Frank P. Francis and Francis General Construction ... from any and all debts, claims, demands, damages, actions, causes of action, of any kind whatsoever, whether known, unknown or unforeseen, arising to the date of this Settlement Agreement, including without limitation any claim or interest Plaintiffs, ... may have with respect to any partnership arrangements between the parties.... The parties hereto declare that they fully understand the terms of the Settlement Agreement and Release and that the other promises and covenants exchanged between them herein are the sole consideration for this Agreement and they voluntarily accept said exchanges, said mutual promises and covenants for the purpose of making a full and final compromise, judgment and settle-

ment of all claims, debts and damages arising out of or to arise out of the disputed matter set forth above.

The Debtor executed the $130,000 "Installment Cognovit Note" required by the Agreement. When the Debtor defaulted on the Note, a "First Amendment to Settlement Agreement and Release" dated May 2, 1991, resulted. This amendment required the letter of confession discussed by the Panel. The amendment also states: "In all other respects the Settlement Agreement and Release shall remain in full force and effect."

Under Ohio law, "[a] release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 552 N.E.2d 207, 210 (Ohio 1990) (citing *Perry v. M. O'Neil & Co.*, 78 Ohio St. 200, 85 N.E. 41 (1908)). "Whether the parties to a release actually intended it to discharge all liability is a question of fact for the trier of the facts." *Sloan v. Standard Oil Co.*, 177 Ohio St. 149, 203 N.E.2d 237 (1964) (paragraph two of syllabus). The Court of Appeals for this Circuit discussed *Sloan* and Ohio law on releases in *AM International, Inc. v. International Forging Equipment Corp.*, 982 F.2d 989 (6th Cir. 1993):

> In *Sloan v. Standard Oil Co.*, 177 Ohio St. 149, 203 N.E.2d 237 (1964), the Ohio Supreme Court held that verbatim terms of a general release are not controlling under circumstances where the parties to a release did not actually intend to discharge all liability. The court set out the Ohio rule for avoiding releases in the syllabus to that opinion:
>
> 1. A release may be avoided where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake, as between himself and the release, of a past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor, unless it appears further that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished.
>
> 2. Whether the parties to a release actually intended to discharge all liability is a question of fact for the trier of the facts.
>
> 3. The terms of a release cannot circumvent the powers of equity to correct mistakes.
>
> *Id.* at 149, 203 N.E.2d at 238 (citation omitted). The court went on to point out that "[t]he dispositive inquiry in each case is what did the parties intend? ... Because intent is a question of fact, it is necessary in each case to examine all the circumstances surrounding the execution of the release." *Id.* at 152–53, 203 N.E.2d at 240.
>
> The Ohio Supreme Court set out factors to be considered in determining the intent of the parties:
>
> > Certain factors have been judicially recognized as aids whereby the intent of the parties at the time the release was executed may be determined. Stated favorably to the party seeking rescission or cancellation, these factors are: The absence of bargaining and negotiating leading to settlement; the releasee is clearly liable; absence of discussion concerning [the type of injuries suffered]; the contention that the injuries were in fact unknown at the time the release was executed is reasonable; an inadequate amount of consideration received compared with the risk of the existence of unknown injuries; haste by the releasee in securing the release; and the terms of the release exclude the injuries alleged.
>
> *Id.* at 153, 203 N.E.2d at 240 (citations omitted).

*AM Int'l*, 982 F.2d at 995–96 (alterations in original).

Because both the bankruptcy court and the Panel mistakenly resolved the effect of the Settlement and Release Agreement as a matter of law against the Debtor, neither addressed the fact questions the Ohio Supreme Court considers outcome determinative of whether the Plaintiff released its right to bring this § 523 action. Was an action to determine the dischargeability in bankruptcy of the debt created by this Debtor's fraud a "known, unknown or unforeseen" cause of

action at the time of the Settlement and Release Agreement? Was the confession attached to the amended agreement intended by the parties to give the Plaintiff a slam-dunk nondischargeability action in the event of bankruptcy; or, was the confession "a pound of flesh" extracted for the psychic compensation of the Plaintiff? Nothing is known of the respective bargaining positions of these parties, their knowledge of the facts or other "circumstances surrounding the execution" of this release.

*Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), does not require the result reached by the Panel. *Brown* is a res judicata or claim preclusion case. *Brown* holds that a prebankruptcy state court judgment that does not find fraud does not preclude the creditor's claim that the judgment debt is nondischargeable under (the predecessor to) § 523(a)(2). *Brown* does not purport to resolve the question whether a creditor (with or without a judgment) is bound by its voluntary prebankruptcy release of a fraud claim. The seminal circuit court cases addressing the effect of a prebankruptcy release predate *Brown*[1] and (appropriately) are not mentioned in Justice Blackmon's comprehensive list of the res judicata cases at issue in *Brown.* *See Brown,* 442 U.S. at 130–31 & n. 4, 99 S.Ct. 2205. Both the Seventh and Ninth Circuits have recognized that the claim preclusion principles in *Brown* are not determinative of whether a creditor has released its § 523(a)(2) action. *See Fischer,* 116 F.3d at 391 ("*Brown v. Felsen* ... [does] not control our case, which involves a voluntary agreement between two parties that created a novation."); *West,* 22 F.3d at 778 ("The holding in *Brown* is immaterial.... *Brown* addressed the preclusive effect of a state court judgment, not a creditor's voluntary release of a debtor.").

The factors that determine whether a judgment is entitled to claim preclusion are different than the factors that determine the effect of a release. Claim preclusion bars

(re)litigation of causes of action that were or could have been raised in prior litigation. *Rivers v. Barberton Bd. of Ed.,* 143 F.3d 1029, 1031 (6th Cir.1998). In contrast, the effect of a release is tightly bounded by the actual intent of the parties. Claim preclusion requires a final judgment on the merits by a court of competent jurisdiction. *Id.* Releases typically are found in contracts that may or may not be incorporated into a court judgment and which do not depend for their legal effect on the validity of any judgment.[2]

The Panel's counter-intuitive notion that incorporation of a release into a prebankruptcy judgment voids the release seems to flow from a mistaken conclusion that release analysis and preclusion principles are mutually exclusive. A voluntary release incorporated into a state court judgment would appropriately be interpreted in subsequent dischargeability litigation under principles of claim preclusion (*Brown*) and issue preclusion (*Grogan*)[3] and analyzed under contract principles.

The Panel cites policy to support its rule that release of a nondischargeability action is not enforceable. Public policy favors the opposite rule: to encourage nonbankruptcy dispute resolution, the intent of the parties should control whether a prepetition settlement agreement precludes § 523(a)(2) litigation. *See West,* 22 F.3d at 778. The Panel's rule removes a major incentive for debtors to settle with creditors before bankruptcy and imposes a previously unrecognized "bankruptcy penalty." A debtor willing to give valuable collateral to a prebankruptcy victim in exchange for release of potentially nondischargeable personal liability bargains for a worthless promise under the Panel's rule. And what about performance by the debtor? A rule that the voluntary release of § 523(a)(2) claims is not enforceable in bankruptcy means a creditor can accept performance of a settlement agreement secure in the knowledge that a bankruptcy petition

---

**1.** *See Maryland Casualty Co. v. Cushing,* 171 F.2d 257 (7th Cir.1948); *Gonder v. Kelley,* 372 F.2d 94 (9th Cir.1967).

**2.** For example, a prebankruptcy judgment incorporating a release agreement entered by a court that lacked jurisdiction would not have preclu-

sive effects, but the contractual release might well be separately enforceable.

**3.** *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

absolves the creditor of its obligations and frees the creditor to seek a nondischargeable personal judgment against the debtor in excess of what it willingly accepted in full satisfaction for the wrong done. In contrast, enforcement of prebankruptcy releases in § 523(a)(2) litigation does not threaten a windfall for debtors (or creditors); it only reinforces the actual intent and expectations of the parties.

Congress has acted in a related context to impose a public policy limitation on the prebankruptcy substitution of a dischargeable obligation for a nondischargeable debt. It was anecdotally demonstrated that before bankruptcy some taxpayers used credit cards to pay income taxes-substituting a dischargeable debt, the charge on a credit card, for a nondischargeable claim, the prepetition taxes. *See The Bankruptcy Amendments Act of 1993: Hearings on S. 540 Before the Subcomm. on Courts and Admin. Prac. of the Comm. on the Judiciary,* 103d Cong. 265 (statement of the American Bankers Ass'n), 370–71 (statement of Mastercard Int'l Inc. and Visa U.S.A. Inc.) (March 31, 1993). In 1994, Congress enacted 11 U.S.C. § 523(a)(14) to bar the dischargeability in bankruptcy of ordinary loans "incurred to pay a tax to the United States that would be nondischargeable pursuant to [§ 523(a)(1) ]." Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 221, 108 Stat. 4106, 4129 (1994). Congress could but has not enacted an exception to discharge in bankruptcy for debts "incurred to pay a claim that would be nondischargeable pursuant to § 523(a)(2)." The judiciary typically refrains from creating new exceptions to discharge.